* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications, and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the date of the injury.
4. An employment relationship existed between the parties on the date of the alleged injury.
5. Tyson Foods Inc. (hereinafter referred to as "Defendant") is self-insured.
6. The alleged injury giving rise to Plaintiff's claim occurred on April 11, 2006.
7. On said date(s), Plaintiff was earning an average weekly wage of $500.00.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Pre-trial Agreement;
 b. Stipulated Exhibit two (2) — Plaintiff's medical records;
 c. Stipulated Exhibit three (3) — North Carolina Industrial Commission forms and filings;
 d. Stipulated Exhibit four (4) — Plaintiff's discovery responses.
 * * * * * * * * * * * ISSUES
The issues for determination are: *Page 3 
1. Whether Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant on April 11, 2006?
2. Whether the alleged April 11, 2006 work injury aggravated and/or exacerbated any pre-existing degenerative disease due to Plaintiff's age?
3. Whether Plaintiff is entitled to any compensation under the North Carolina Workers' Compensation Act?
4. Whether Defendant is entitled to a credit for short-term disability benefits paid from April 14, 2006 through July 14, 2006, and from February 6, 2007 through May 6, 2007?
 * * * * * * * * * * *
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Defendant employed Plaintiff as a yard truck driver. Plaintiff worked for Defendant for approximately 32 years.
2. On April 11, 2006, Plaintiff testified that while working as a yard truck driver for Defendant, he experienced a burning pain in his lower back when he bent down under the refrigeration unit of a trailer, hooked up the air lines and pulled on them to keep air from escaping. Prior to feeling the burning in his lower back, Plaintiff hooked a ladder weighing about 80 pounds to the back end of a trailer, placed a heavy water hose into the trailer and used a heavy, pressurized water hose to the clean out the trailer. Thereafter, when Plaintiff was driving the yard truck pulling a trailer across the yard, he experienced a severe pain, which caused him to double over. Plaintiff radioed to the checkpoint to inform his co-workers of his pain. Plaintiff *Page 4 
reported that he did not know what caused the pain, and someone suggested it might have been a kidney stone.
3. Plaintiff's supervisor, Mr. Junior Walker, recalled that Plaintiff reported that his kidney was hurting on or about April 11, 2006. Plaintiff did not inform Mr. Walker that he injured his back.
4. On April 14, 2006, Plaintiff completed a "Team Member Statement of Injury" form, where he reported that he was driving a yard truck when he experienced pain on the left side of his back. Plaintiff also indicated on this form that he reported the incident to Mr. Walker on April 11, 2006.
5. On April 15, 2006, Plaintiff completed a second "Team Member Statement of Injury" form, where he stated that he was driving the yard truck when he felt a sharp pain in the left side of his back.
6. On April 17, 2006, Mr. Walker completed a written statement explaining that Plaintiff advised him that he had kidney stones. The Form 19, which Defendant completed on the same date as Mr. Walker's statement, reported that Plaintiff was driving a yard truck when he felt a sharp pain in his back on April 11, 2006.
7. On April 17, 2006, Plaintiff sought treatment with Dr. John L. Bond. Plaintiff reported driving the yard truck and experiencing pain in his lower, midline back. Plaintiff did not report a history of an injury or specific incident precipitating his back pain. Dr. Bond diagnosed Plaintiff with severe degenerative joint disease with severe arthritic changes, which in his opinion was not work related.
8. In May 2006, Plaintiff came under the care of Dr. Daniel Murrey. The medical notes of Dr. Murrey indicate that Plaintiff reported he was driving the yard truck when he felt *Page 5 
like a knife was stuck in his back. Dr. Murrey recommended an MRI to rule out nerve root compression. The MRI of Plaintiff's lumbar spine revealed degenerative disc disease with mild spinal stenosis at L4-L5 and L5-S1, with a broad-based bulging annulus and left paramedian focal disk extrusion and another protrusion at L1-L2. Based on the readings from the MRI, Dr. Murrey recommended facet injections, which Dr. James Alexander performed.
9. Dr. Alexander recommended a CT myelogram to see if there was any left nerve root effacement. Dr. Alexander and Dr. Murrey reviewed the results of the CT myelogram. In their medical opinion, the abnormality at L5-S1 was a calcified right paracentral disc protrusion, which abutted the right S1 nerve root. Dr. Alexander discussed treatment options and recommended that Plaintiff be as active as possible.
10. On March 20, 2007, Plaintiff returned to Dr. Alexander and advised him that he did not believe he could return to work. Plaintiff presented long-term disability documentation to be completed by Dr. Alexander. After a discussion, Dr. Alexander informed Plaintiff that he felt Plaintiff would benefit from a less physical job and that he was not fully disabled as a result of his physical condition. Dr. Alexander left the decision about returning to work up to Plaintiff.
11. On April 17, 2007, Plaintiff returned to Dr. Alexander with complaints of back pain at a level 6 on a scale of 1 to 10. Dr. Alexander referred Plaintiff to Dr. Knapp for an evaluation of his condition. Based on an unremarkable examination, Dr. Knapp recommended that Plaintiff participate in a lumbar exercise program with physical therapy. He also released Plaintiff to return to restricted work of no repetitive bending or lifting of more than 10 to 15 pounds.
12. Plaintiff continued under the care of Dr. Alexander, who released Plaintiff from his care and to return to work without restrictions on November 26, 2007. *Page 6 
13. Based on his evaluation and treatment of Plaintiff, Dr. Murrey opined that Plaintiff was at maximum medical improvement with, at most, a 3 percent permanent partial disability rating to the back.
14. Plaintiff returned to work full duty in his former position on a different shift. Plaintiff felt that he could re-injure his back and elected to leave employment with Defendant. In December 2007, Plaintiff began working with Lowe's as a delivery driver moving appliances with a hand truck.
15. When presented with a hypothetical question on causation, both Dr. Alexander and Dr. Murrey opined that Plaintiff's activities on the date in question could have exacerbated his pre-existing back condition, necessitating medical treatment. Dr. Bond responded that if the events as listed in the hypothetical were true, then the events "could or might have" caused Plaintiff's injury. However, Dr. Bond clarified that Plaintiff did not report any such incident and specifically described to him the sudden onset of back pain while sitting in his yard truck. The hypothetical question presented to Dr. Bond indicated that Plaintiff "was struck by pain in his back" when he bent over and reached underneath the cab to disconnect the trailer. Plaintiff testified, however, that he felt a burning sensation in his lower back while bending over to hook up the air lines.
16. In November 2006, Plaintiff completed a Form 18 stating that while he was in the process of pulling a loaded trailer, he had severe pain in his back. This account is similar to the incident Plaintiff described at the hearing before the Deputy Commissioner; however, Plaintiff mentioned at the hearing, apparently for the first time, that he felt a burning sensation in his lower back while bending over to hook up air lines a short time before experiencing severe pain while driving the yard truck. *Page 7 
17. In assessing the credibility of Plaintiff in light of the credible testimony of Plaintiff's supervisor, Mr. Walker, the initial work reports completed by Plaintiff soon after the alleged incident, and the fact that none of the treating physicians noted a report of a specific traumatic incident or injury in their medical records or recalled Plaintiff describing the same, the Full Commission does not find Plaintiff's testimony at the hearing to be entirely credible. The Full Commission finds that Plaintiff first experienced an onset of low back pain while driving the yard truck without a specific traumatic incident.
18. The greater weight of the evidence establishes that Plaintiff did not suffer an injury by accident or specific traumatic incident on April 11, 2006. Plaintiff had pre-existing severe degenerative joint disease with severe arthritic changes, which Dr. Bond opined, and the Full Commission finds as fact, was not work related. Plaintiff had an onset of pain while riding in a yard truck, without a precipitating specific incident. The burden is on Plaintiff to establish that his back condition is causally related to the alleged April 11, 2006 incident. Expert medical opinions based on mere speculation and conjecture are not competent evidence on issues of medical causation. In this case, the medical evidence is insufficient to support Plaintiff's burden of proving causation to establish the compensability of his back condition.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove, by the greater weight of the evidence, that he sustained a compensable injury by accident or specific traumatic incident to his back while at work on April *Page 8 
11, 2006. N.C. Gen. Stat. § 97-2(6); Causby v. Bernhardt FurnitureCo., 83 N.C. App. 650, 351 S.E.2d 106 (1986).
2. "In a worker's compensation claim, the employee has the burden of proving that his claim is compensable." Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). In many instances, the facts in evidence are such that any layman of average intelligence would know what caused a person's injuries; however, the exact nature and cause of some injuries must be established by expert opinion evidence. Clickv. Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley v. ACTS, Inc., 357 N.C. 228, 231,581 S.E.2d 750, 752 (2003). Although expert testimony as to the possible
cause of a medical condition is admissible if helpful to the jury, Cherryv. Harrell, 84 N.C. App. 598, 603, 353 S.E.2d 433, 436, disc. rev.denied, 320 N.C. 167, 358 S.E.2d 49 (1987), such testimony is insufficient to prove causation, particularly "when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." Young v. Hickory Bus. Furn., 353 N.C. 227, 233,538 S.E.2d 912, 916 (2000); Holley, 357 N.C. 228, 233, 581 S.E.2d 750, 753
(2003). In this case, Plaintiff had pre-existing severe degenerative joint disease with severe arthritic changes, which was not work related. Plaintiff had an onset of pain while riding in a yard truck, without a precipitating specific incident. The medical opinions of Dr. Alexander, Dr. Bond, and Dr. Walker in response to the hypothetical question presented which was not entirely accurate, were speculative. Also, Plaintiff's testimony at hearing, that he had a burning in his back when he bent down to hook up the air lines prior to the pain he experienced while riding across the yard, has not been found credible. Accordingly, there is insufficient competent medical evidence to support a finding that the alleged incident of April 11, 2006 caused, *Page 9 
aggravated or exacerbated Plaintiff's back condition for which he received treatment in 2006 and 2007. The greater weight of the evidence establishes that Plaintiff experienced an onset of pain while driving across the yard without a specific traumatic incident. The onset of Plaintiff's pain, without more, does not establish a specific traumatic incident. Chambers v. Transit Management, 360 N.C. 609, 636 S.E.2d 553
(2006). "The onset of pain is not a `specific traumatic incident' that will determine whether compensation will be allowed pursuant to the act; pain is, rather, as a general rule, the result of a `specific traumatic incident." Roach v. Lupoli Constr. Co., 88 N.C. 271, 273, 362 S.E.2d 823,824 (1987).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for benefits under the Act is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of March 2009.
S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________________ PAMELA T. YOUNG CHAIR
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1