McCULLOUGH, Judge.
Brent Lee Stanley ("defendant") appeals his conviction of felony possession of marijuana. On appeal defendant argues that the trial court erred in denying his motion to suppress evidence. For the reasons set forth herein, we hold no error.
I. Procedural Background
Defendant was indicted by a Johnston County grand jury on 5 August 2013 for possession of marijuana with intent to sell and deliver, in violation of N.C. Gen.Stat. § 90-95(a)(1), and possession of drug paraphernalia, in violation of N.C. Gen.Stat. § 90-113.22(a). On 19 December 2013, pursuant to N.C. Gen.Stat. § 15A-972, defendant filed a motion to suppress "all items seized from [defendant] connected to the traffic stop by the Smithfield Police Department on June 11, 2013." A suppression hearing was held on 2 June 2014, and the arresting officer, Officer Kenneth Hundley, a patrol officer of Smithfield Police Department, testified to the events surrounding the arrest. The dash-cam video of the traffic stop was entered into evidence as State's Exhibit 1. Based on the evidence, the trial court denied defendant's motion to suppress.
Defendant pled guilty to felony possession of marijuana in Johnston County Superior Court on 6 August 2014. The trial court determined defendant had a prior record level of I, and defendant was sentenced to four to fourteen months of imprisonment. However, defendant's sentence was suspended and he was placed on supervised probation for eighteen months. On 6 August 2014, defendant gave this Court notice of appeal of his conviction.
II. Factual Background
On 11 June 2013, at approximately 3:15 p.m. Officer Hundley initiated a traffic stop of a four-door Toyota Avalon because he noticed the registration plate was expired. Officer Hundley then checked the registration plate in the Division of Criminal Information ("DCI") system, which contains the expired license plates' records, and confirmed that the plate was expired. Officer Hundley executed a traffic stop and approached the driver's side of the Toyota Avalon. There were four people in the vehicle, and defendant was seated in the back passenger seat on the driver's side. Officer Hundley testified that when he was talking to the driver of the vehicle she appeared nervous. Officer Hundley explained that the driver's hands were "shaking" and "trembling" when she handed him her driver's license. Officer Hundley testified that he informed the driver that he had stopped her because the vehicle's license plate was expired. After receiving the driver's license, Officer Hundley returned to his patrol car and began writing the driver a citation for an expired registration plate.
Officer Hundley requested a "check-in unit," assistance from another police officer, due to the driver's visible nervousness because he believed that "[i]f they're shaking, something's going on and something's afoot there ... other than the expired plates ." While Officer Hundley was at his patrol car, Sergeant Memmelaar arrived on the scene as the check-in unit. When Officer Hundley returned to the vehicle, he informed the driver that he "was writing her a citation for the expired plate" and noticed that she was "[s]till visibly shaking." Officer Hundley then asked the driver "if she was okay because [he] noticed that she was visibly shaking ... over expired plates," which was "making [him] nervous." The driver explained that she gets nervous at traffic stops and her husband, the front passenger, has a nervous condition that causes him to always shake. Officer Hundley then asked the driver if there was anything illegal in the vehicle, and the driver stated there was not. Officer Hundley also asked the driver if she would consent to a search of her vehicle, and she consented. At that time, Officer Hundley had not given the driver her license back or the citation. Officer Hundley then told the driver "[i]f you don't mind, you're going to step out of the vehicle so I can search it." At that time, both the driver and defendant, the rear passenger on the driver's side, began to exit the vehicle. Officer Hundley testified that defendant "was in such a hurry to get out," so Officer Hundley asked the driver to remain in her vehicle while defendant stepped out of the vehicle.
After defendant stepped out, Officer Hundley "asked if [defendant] had any weapons on his person." Defendant informed Officer Hundley that "he had a knife in his front pants pocket." At that point, defendant stated "[Officer Hundley] could pat him down, but [defendant] didn't want [Officer Hundley] to search him." Officer Hundley informed defendant "[he] was going to retrieve the knife until [he] finished the traffic stop," and then Officer Hundley retrieved the knife from defendant's front right pants pocket. Officer Hundley testified that while he was retrieving defendant's pocket knife, he "smell[ed] an odor of marijuana in that area." That was the first time Officer Hundley had detected an odor of marijuana throughout the course of the traffic stop.
Officer Hundley also noticed that the lower cargo pocket on defendant's pants was "bulging out" as though it was "really full of something." Officer Hundley asked defendant if he had any other weapons on his person and defendant responded he did not. Officer Hundley then specifically asked what was in defendant's cargo pocket and defendant answered " 'just stuff." Officer Hundley testified that "at that point[,][he] could still smell marijuana." Officer Hundley then "touched" and "squeezed" the cargo pocket and testified that "[he] felt a hard object" in the pocket. Officer Hundley also testified that while he was touching the pocket the marijuana smell was stronger and "[he] knew from [his] training and experience ... the odor was coming from [the cargo] pocket." Then Officer Hundley informed defendant that "[he] could smell marijuana coming from the pocket and that [he] was going to retrieve the items at that time from the pocket." Officer Hundley then retrieved a black bag with gold lettering on it. Officer Hundley testified that "[w]hen [he] pulled [the bag] out, [he] looked at it and [he] could see that the marijuana was inside." Officer Hundley then placed the bag on top of the vehicle, finished searching defendant, and handcuffed defendant.
Officer Hundley patted down the driver of the vehicle and proceeded to search the vehicle. Officer Hundley did not find any drugs in the vehicle. After completing his search of the vehicle, prior to leaving the traffic stop, Officer Hundley looked inside of the bag and found digital weighing scales, several clear plastic baggies, and two bags containing a total of 45.5 grams of marijuana.
III. Discussion
Defendant raises three issues on appeal. Defendant argues the trial court erred by (A) finding that the consent to search the vehicle and defendant's subsequent consent to be patted down were both valid and not the result of an unlawful detention; (B) concluding that Officer Hundley had probable cause to search defendant's person; and (C) concluding that the search of the bag seized from defendant was constitutional. We disagree.
Standard of Review
Review of a trial court's denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke,306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). The trial court's conclusions of law are reviewed de novo. State v. Hudgins,195 N.C.App. 430, 432, 672 S.E.2d 717, 718 (2009).
A. Unlawful Detention
On his first argument on appeal, defendant contends that the consent to search the vehicle and subsequent consent to be patted down are invalid because both were obtained as a result of an unlawful detention. We hold that because defendant failed to raise that argument at the trial court level he has waived his argument on appeal.
This Court is bound by defendant's arguments made at the trial court level. See State v. Hunter,305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). "Defendant may not swap horses after trial in order to obtain a thoroughbred upon appeal." State v. Benson,323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988) (citation omitted). In State v. Hudson,this Court held that a defendant appealing a denied motion to suppress could not raise arguments regarding the duration of the stop and the nature of the stop when the only argument made at the trial court level regarded that the stop was made without reasonable and articulable suspicion that criminal activity was afoot. State v. Hudson,206 N.C.App. 482, 487-88, 696 S.E.2d 577, 581-82 (2010).
Here, defendant failed to argue the unlawful detention issue in his written motion or at the motion to suppress hearing. At the trial court hearing, defendant argued that the pat down was unlawful because there was no probable cause to search defendant. Defendant never made an argument that the lawful stop was unlawfully extended by Officer Hundley until his appeal. Thus, defendant waived the argument of unlawful detention.
B. Probable Cause to Search Defendant's Person
Next, defendant contends the trial court erred in its conclusion "[t]hat Officer Hundley had probable cause to search the [d]efendant's person based on the plain smell of marijuana emanating from the person of the [d]efendant." We disagree.
The general rule is that for an officer to legally search a person, the officer must have a warrant unless the circumstances qualify for an exception to this default rule. Cooke,306 N.C. at 135, 291 S.E.2d at 620. An officer is allowed to conduct a warrantless search of a person if there is probable cause of illegal activity and "the exigencies of the situation make search without a warrant necessary." State v. Mills,104 N.C.App. 724, 730, 411 S.E.2d 193, 196 (1991). The North Carolina Supreme Court in State v. Greenwood,held that "the smell of marijuana gave the officer probable cause to search the automobile for the contraband drug." State v. Greenwood,301 N.C. 705, 708, 273 S.E.2d 438, 441 (1981). This Court then extended that doctrine in State v. Yatesto establish that the odor of marijuana is also sufficient evidence to provide probable cause to search an individual. See State v. Yates,162 N.C.App. 118, 123, 589 S.E.2d 902, 905 (2004).
Here, defendant voluntarily exited the vehicle after the driver consented to Officer Hundley searching the vehicle. Officer Hundley had not asked defendant to exit. Upon exiting the vehicle, Officer Hundley asked defendant if he had any weapons on his person. Defendant informed Officer Hundley that "he had a knife in his front pants pocket" and voluntarily said that Officer Hundley "could pat him down, but [defendant] didn't want [Officer Hundley] to search him." At that point, both the detention of the vehicle and the pat down of defendant were voluntary consensual encounters. Officer Hundley testified that while he was retrieving the knife, an act defendant consented to, "[he] could smell an odor of marijuana in that area." Officer Hundley testified that he has been trained on how to detect the odor of marijuana and has been involved in hundreds of cases involving marijuana. Therefore, the odor of marijuana provided Officer Hundley with probable cause to conduct a warrantless search of defendant's person. See Yates,162 N.C.App. at 123, 589 S.E.2d at 905.
Defendant contends that probable cause alone is insufficient to conduct a warrantless search because the law requires both probable cause and exigent circumstances. See Yates,162 N.C.App. at 123, 589 S.E.2d at 905 (explaining that after determining the odor of marijuana creates probable cause to search an individual "[t]he question thus remains whether there were exigent circumstances justifying the warrantless search of defendant"). Although the trial court did not specifically articulate in its conclusion that both probable cause and exigent circumstances existed to justify a warrantless search, it is clear based upon the factual findings that such exigent circumstances existed. Yates,162 N.C.App. at 12123, 589 S.E.2d at 904-905 (concluding the trial court did not err in denying the defendant's motion to suppress based on the finding that the officer "had probable cause to search defendant"). Officer Hundley had probable cause to search defendant's cargo pocket based upon the odor of marijuana. In addition, the same exigent circumstances this Court found to be present in Yatesare present here. Just as in Yates,the criminal offense is possession of drugs. Yates,162 N.C. at 119, 589 S.E.2d at 903. In Yatesthis Court concluded "that there were sufficient exigent circumstances justifying an immediate warrantless search" because the drugs could be "easily and quickly hidden or destroyed, especially after defendant received notice of [the officer's] intent to discover whether defendant was in possession of marijuana." Id.at 123, 589 S.E.2d at 905. Here, defendant knew Officer Hundley was searching for marijuana because Officer Hundley stated he smelled marijuana and asked defendant what was in his pocket. Just as in Yates,exigent circumstances existed because the narcotics could be easily hidden or destroyed. Id.Thus, the trial court did not err in concluding that the warrantless search of defendant was constitutional.
C. Search of the Bag Seized from Defendant
Defendant contends that the search of the bag seized from defendant was unconstitutional. Specifically, defendant argues that the trial court erred by concluding: (1) the search of the bag was lawful because it was a search incident to arrest; (2) the search of the bag was lawful because Officer Hundley had probable cause due to the plain view of marijuana in the bag; and (3) that probable cause and exigent circumstances justified Officer Hundley searching the bag. We disagree.
First, defendant contends the trial court erred in its conclusion that "pursuant to N.C.G.S. 15A-401(b)... Officer Hundley lawfully had probable cause to look in the bag pursuant to a valid search incident to arrest of [d]efendant for possession of marijuana ."
"An officer may conduct a warrantless search incident to a lawful arrest." Mills,104 N.C.App. at 728, 411 S.E.2d at 195 (citing State v. Hardy,299 N.C. 445, 455, 263 S.E.2d 711, 718 (1980) ). Defendant's arrest was lawful. "An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense ... in the officer's presence." N.C. Gen.Stat. § 15A-401(b)(1) (2013). Here, Officer Hundley had probable cause to believe defendant had committed a criminal offense in his presence. The odor of marijuana Officer Hundley detected during the consensual pat down of defendant provided Officer Hundley with probable cause that defendant was in possession of marijuana in violation of N.C. Gen.Stat. § 90-95. See Yates,162 N.C.App. at 123, 589 S.E.2d at 905. Thus, pursuant to N.C. Gen.Stat. § 15A-401(b)(1) Officer Hundley had authority to arrest defendant without a warrant.
The search of defendant's bag was a lawful search incident to arrest because the contents of the bag were not necessary to provide the probable cause needed to arrest defendant. "A search is considered incident to arrest even if conducted prior to formal arrest if probable cause to arrest exists prior to the search and the evidence seized is not necessary to establish that probable cause." Mills,104 N.C.App. at 728, 411 S.E.2d at 195 (citation omitted). In State v. Toledo,the officer was given consent to search defendant's vehicle during the course of a lawful traffic stop. State v. Toledo,204 N.C.App. 170, 175, 693 S.E.2d 201, 204 (2010). While the officer was searching the defendant's vehicle, the officer noticed an unusually large spare tire in the trunk and conducted a "ping test" on the tire. Id.at 172, 693 S.E.2d at 202. At that time, the officer smelled marijuana coming from the tire and arrested defendant for possession of marijuana. Id.at 175, 693 S.E.2d at 204. This Court held that the officer's search of the tire was a lawful search incident to arrest. Id.In Toledo,the officer had probable cause to arrest based solely on the odor of marijuana and then after arresting the defendant, had the right to search the tire as a search incident to arrest. Id.
Here, the search of the bag is similar to the search of the tires in Toledo.Officer Hundley had probable cause to arrest defendant based solely on the odor of marijuana. Then after arresting defendant based on that probable cause, Officer Hundley searched the bag, as a search incident to arrest. Defendant's argument that the contents of the bag were necessary to make the arrest is erroneous. The circumstance giving rise to probable cause that Officer Hundley based defendant's arrest on was the odor of marijuana. Since the evidence within the bag was not necessary to have probable cause to make the arrest, it was a lawful search incident to arrest.
Next, defendant contends the trial court erred in its conclusion that "Officer Hundley had probable cause to look in the bag because when Officer Hundley pulled the bag out from the [d]efendant's right cargo pocket the bag was not sealed shut and was partially open and Officer Hundley saw marijuana in plain view in the bag." Defendant contends that the plain view doctrine only allows for a warrantless seizure of property, but does not allow for the search of such property. We disagree.
As a preliminary matter, defendant argues that the trial court erred in its finding of fact 18 that the bag that contained the marijuana "was not sealed and was partially open and Officer Hundley saw marijuana in plain view in the bag." This Court is bound by the trial court's findings of fact so long as such findings are supported by competent evidence. State v. Barden,356 N.C. 316, 332, 572 S.E.2d 108, 120-21 (2002). Here, the trial court's finding of fact that the bag was partially open is supported by competent evidence. Officer Hundley testified that the bag was black and "[he] could see that the marijuana was inside" when he retrieved it. Further, there was no contradictory testimony to suggest anything different. Thus, the trial court's finding that the bag was partially open is supported by competent evidence and is binding on this Court.
The plain view doctrine allows for the seizure of an item "when the officer was in a place where he had a right to be when the evidence was discovered and when it is immediately apparent to the police that the items observed constitute evidence of a crime, [or] are contraband[.]" State v. Mickey,347 N.C. 508, 516, 495 S.E .2d 669, 674 (1998). However, defendant's contention that the plain view doctrine only allows for a warrantless seizure and not a warrantless search mischaracterizes the law. The North Carolina Supreme Court held "[w]hen law enforcement observes contraband in plain view, no reasonable expectation of privacy exists, and thus, the Fourth Amendment's prohibition against unreasonable warrantless searches is not violated." State v. Grice,367 N.C. 753, 756, 767 S.E.2d 312, 315-16 (2015) (citation omitted). The Supreme Court explained "[w]hen there is no privacy interest, there can be no [unlawful] search under the Fourth Amendment." Id.at 756, 767 S.E.2d at 316. Officer Hundley lawfully seized the bag because the odor of marijuana provided Officer Hundley with probable cause to search defendant's pocket. After Officer Hundley lawfully seized the bag, he testified that "[he] looked at [the bag] and [he] could see that the marijuana was inside." Therefore, the marijuana was in plain sight and the search of the bag did not violate the Fourth Amendment.
Because the search was constitutionally valid based on the grounds previously discussed, we do not address defendant's remaining argument that there were not sufficient exigent circumstances to justify Officer Hundley's search of the bag retrieved from defendant's right cargo pocket. Officer Hundley's search of the bag lawfully seized from defendant was constitutional as both a search incident to arrest and under the plain view doctrine.
NO ERROR.
Judges STROUD and INMAN concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment entered 6 August 2014 by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals on 21 May 2015.