MAUDE EXUM CHERRY, AND WILLIAM E. CHERRY v. MAGGIE LOUISE HARRELL

No. 867SC703

(Filed 17 March 1987)

**Evidence § 50.2 — expert medical testimony — cause of injury — testimony helpful to jury and admissible**

In an action to recover for personal injuries allegedly sustained in an automobile accident, a medical expert's testimony was not inadmissible for failure to state that it was based on "reasonable medical probability"; rather, the expert opinion testimony on causation was admissible if it assisted the jury's understanding of the evidence or determination of a fact in issue. In this case, the expert's opinion on causation was adequately based both on his treatment of plaintiff and on statements plaintiff made to him for the purpose of treatment so that the opinion testimony would have been helpful to the jury and it should have been admitted. N.C.G.S. 8C-1, Rules 702-05.

APPEAL by plaintiffs Maude Exum Cherry and William E. Cherry from *Fountain, Judge.* Judgment entered 25 September 1985. Heard in the Court of Appeals 10 December 1986.

*Hopkins and Allen, by Jesse Matthewson Baker, for plaintiff-appellant Maude E. Cherry.*

*Evans and Lawrence, by Antonia E. Lawrence, for plaintiff-appellant William E. Cherry.*

*Don Evans for defendant-appellee.*

GREENE, Judge.

This is a personal injury suit arising from an automobile accident. At trial, the evidence tended to show that, on 19 September 1981, defendant Harrell's car struck the car in which plaintiff Maude Cherry was a passenger. During treatment at a hospital emergency room, plaintiff tested positive in response to a standard "straight-leg-raising" test. Such positive response indicates a protruded or ruptured disk. On 28 September 1981, plaintiff consulted her family physician who determined she had muscle strain in her neck and upper back. Plaintiff continued to complain of back pain and saw her family physician on several other occasions until January 1982. Because of her continuing back problems, plaintiff was referred to Dr. Robert Appert, an orthopedic surgeon. Plaintiff first saw Dr. Appert on 6 January 1982. During this first visit, plaintiff complained primarily of neck pain. She told Dr. Appert of her automobile accident and stated her pain began about two days after the accident. Plaintiff first mentioned her back pain to Dr. Appert on 9 February 1982. Dr. Appert x-rayed plaintiff's back and diagnosed her condition as chronic L-4 disk disease.

In May 1982, Dr. Appert gave plaintiff a straight-leg-raising test and found no apparent ruptured disk. On 30 November 1982, plaintiff again complained of back pain. Dr. Appert conducted another straight-leg-raising test which also proved negative. On 25 January 1983, Dr. Appert indicated no further treatment was necessary. Plaintiff subsequently received ten chiropractic treatments after 25 January 1983. On 18 March 1983, plaintiff consulted Dr. Appert again. On 14 June 1983, Dr. Appert conducted a myelogram which disclosed a probable herniated disk. Spinal surgery was performed which confirmed the herniated disk.

Dr. Appert's deposition revealed the following testimony on the cause of plaintiff's herniated disk:

Cherry v. Harrell

Q. Now, was this ruptured disk related to her—her automobile collision of September 18th [sic], 1981?

A. It is my impression that her back problems are related to the accident that she was involved in in 1981.

* * *

Q. Now, based on your examination of Ms. Cherry, have you an opinion as to what most likely caused her herniated disk?

A. The assumption that I have to make as a physician is that if she is not complaining of back discomfort previous to the time that I saw her in January of 1982, and has the onset of back pain following that that continues on for a year and a half, I have to look for an event in time.

And the only event in time I can find, in taking care of this patient, is an automobile accident.

* * *

Q. Doctor, we've talked about possibilities, but based on your examinations, what is most likely to have happened to Ms. Maude Exum Cherry in this incident, based on the factors, to your knowledge?

A. Well, I'd have to look at it in temporal sequence. I see a lady or a patient in the office who is complaining of back pain temporally related to an automobile accident that occurred in the same period of time, and it never got better.

If she'd fallen down the stairs, then I'd have a choice. Well, was it the automobile accident or falling down the stairs? I have no alternative but to believe the patient. She relates it to an event in time, and that's what I have to base my judgment on, since that's the only, quote, "exertion" around that time, when the back pain started was an automobile accident. So I have to relate it to that.

At the deposition, defendant objected to all of the questions above and subsequently moved to strike them at trial. The court sustained the objections to the questions and allowed defendant's motion to strike all the answers.

On cross-examination, Dr. Appert also testified as follows:

Q. And would you agree, Doctor, that—that her ruptured or herniated disk that you found could just have easily
have been caused by one of these other strenuous activities
as by the accident in September 1981?

A. It could be caused by any event, as well as an overload on the spine.

The jury found the defendant negligent and awarded plaintiff
$7,917.00. Plaintiff William E. Cherry, husband of Maude Exum
Cherry, had claimed loss of consortium arising from his wife's injuries. The jury found against William E. Cherry on this claim.

Plaintiffs appeal.

The Court must consider whether the trial court properly excluded Dr. Appert's opinion: (1) for Dr. Appert's failure to state
his opinion was "reasonably probable" or (2) for any other reason?

I

Exclusion of Dr. Appert's expert opinion was crucial for
plaintiff since our courts have long held the cause of back injuries
can only be established by expert medical testimony. *E.g., Gillikin
v. Burbage*, 263 N.C. 317, 325, 139 S.E. 2d 753, 760 (1965); *accord,
Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 168, 265 S.E. 2d
389, 391 (1980).

In her appeal, plaintiff contends Dr. Appert's testimony was
competent expert opinion admissible under N.C. Gen. Stat. Sec.
8C-1, Rules 702-705 (1984). Rule 702 states that:

If scientific, technical or other specialized knowledge *will
assist the trier of fact to understand the evidence or to
determine a fact in issue*, a witness qualified as an expert by
knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion. [emphasis added]

Simply put, "under Rule . . . 702, opinions must be helpful to the
trier of fact . . . ." N.C. Gen. Stat. Sec. 8C-1, Rule 704 advisory
committee note. Rule 703 states:

The facts or data in the particular case upon which an
expert bases an opinion or inference may be those perceived

by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Rule 704 simply states, "Testimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Finally, Rule 705 states in part:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or *voir dire* before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Defendant contends the above-mentioned Rules are irrelevant in this instance and argues the trial court properly struck Dr. Appert's testimony as inadmissible on the ground that neither the questions presented to Dr. Appert nor his answers stated it was "reasonably probable" that plaintiff's accident "could have" caused her ruptured disk. In *Lockwood v. McCaskill*, 262 N.C. 663, 668-69, 138 S.E. 2d 541, 545 (1964), our Supreme Court stated:

> "If the opinion asked for is one relating to cause and effect, the witness should be asked whether in his opinion a particular event or condition *could* or *might* have produced the result in question, not whether it did produce such a result." Stansbury: North Carolina Evidence (2d Ed.), sec. 137, p. 332. (Emphasis ours.) The "could" or "might" as used by Stansbury refers to probability and not mere possibility. It is contemplated that the answer of the expert will be based on scientific knowledge and professional experience. [citations omitted]. . . . The expert may express the opinion that a particular cause "could" or "might" have produced the result — indicating that the result is capable of proceeding from the particular cause as a scientific fact, *i.e., reasonable probability* in the particular scientific field. [emphasis added].

Echoing *Lockwood,* the Court rejected a claim in *Gillikin* that a back injury was caused by a prior accident since there was "not

a scintilla of medical evidence that plaintiff's ruptured disk might, with *reasonable probability*, have resulted from the accident . . . ." 263 N.C. at 324, 139 S.E. 2d at 759 (emphasis added). It is clear Dr. Appert's testimony was not expressly qualified by the *Lockwood* formula of "reasonable probability." Instead, Dr. Appert testified in part that: (1) his impression was that the accident and injury were "related"; (2) when asked what "most likely" caused plaintiff's ruptured disk, he stated the only "event in time" he could find was the automobile accident; (3) when asked what "most likely happened" to plaintiff, he again responded that, based on what plaintiff told him, he would have to relate the injury to the accident.

At the time of *Lockwood* and *Gillikin*, expert testimony on ultimate issues was prohibited. Experts could neither indulge in baseless conjecture, *Lockwood*, 262 N.C. at 667, 138 S.E. 2d at 544-45, nor could they testify with outright certainty since that would supposedly invade the "province of the jury." Thus evolved the formulation that the expert testify it was "reasonably probable" that an accident "could have" or "might have" caused plaintiff's injury. *See Lockwood*, 262 N.C. at 668, 138 S.E. 2d at 545. In *Lockwood*, our Supreme Court based its formula in part on Stansbury's *North Carolina Evidence.* Later editions of that work made the following note:

> In *Lockwood v. McCaskill* [citation omitted], . . . the Court held that to be admissible, medical causation testimony must indicate a reasonable scientific probability that the stated cause produced the stated result. . . . *This seems to confuse admissibility with sufficiency, and it is to be hoped that no attempt will be made to follow it.*

Stansbury, *North Carolina Evidence*, Sec. 137, p. 108 n. 67a (2d ed. Supp. 1970) (emphasis added).

Dean Brandis has summarized the dilemma as follows:

*Lockwood v. McCaskill* [citation omitted] interpreted literally, created a dilemma—*i.e.*, "could or might" was not positive enough to justify a finding, but no more positive opinion was admissible. In practice, the dilemma was resolved by treating "could or might" as sufficient, though the questions were frequently embroidered by such phrases as "to a reasonable

degree of medical certainty." [citations omitted] . . . [P]ositive causation testimony ordinarily will settle the matter of sufficiency, provided it is not *inherently incredible*.

1 H. Brandis, *Brandis on North Carolina Evidence*, Sec. 137, p. 549 n. 57 (2d Rev. Ed. 1982) (emphasis added).

With the adoption of Rule 704, expert testimony was no longer "objectionable" though it embraced "an ultimate issue to be decided by the trier of fact." Consequently, our Supreme Court has cited Rule 704 in specifically rejecting the requirement of "could" or "might" phraseology. *State v. Smith*, 315 N.C. 76, 100, 337 S.E. 2d 833, 849 (1985). Even prior to the new Rules, there were several exceptions to the *Lockwood* requirement that experts could only state their opinions to a "reasonable medical certainty." *E.g., Kennedy v. Martin Marietta Chemicals*, 34 N.C. App. 177, 181, 237 S.E. 2d 542, 545 (1977); *see generally* 1 H. Brandis, *supra*, sec. 137, p. 549 n. 56 (2d rev. ed. 1982 & Cum. Supp. 1986) (collecting cases).

In short, the "could" or "might" formula circumvented the prohibition against ultimate issue testimony. "Reasonable probability" was employed to increase the degree of certainty allowed within the confines of the *Lockwood* formula. However, once the absolute prohibition on ultimate issue testimony is lifted, there is clearly no rationale for such limits on expert testimony. Thus, we hold Dr. Appert's testimony was not inadmissible for failure to state it was based on "reasonable medical probability."

The touchtone issue governing the admissibility of Dr. Appert's expert opinion is instead Rule 702: did Dr. Appert's testimony on causation assist the jury's understanding of the evidence or determination of a fact in issue? While it is true Dr. Appert elsewhere stated events other than plaintiff's 1981 car accident could have caused her ruptured disk, such testimony does not render his opinion of no "assistance" to the jury. Dr. Appert clearly testified that, based on the facts and data available to him, the event which "most likely" caused the ruptured disk was plaintiff's car accident. We note that the *Smith* Court admitted unqualified testimony that a penis caused the victim's injuries in that case; however, the Court noted parenthetically that, on cross-examination, the expert had conceded the injuries could have been caused by some other object of the same size and shape. 315

N.C. at 100, 337 S.E. 2d at 849; *see also Largent v. Acuff,* 69 N.C. App. 439, 443, 317 S.E. 2d 111, 113, *disc. rev. denied,* 312 N.C. 83, 321 S.E. 2d 896 (1984) (stating one factor "quite likely" caused injury held sufficient). Accordingly, while the existence of other possible causes of plaintiff's ruptured disk might reduce the weight accorded Dr. Appert's opinion, we hold such other possibilities do not alone render his opinion inadmissible.

While baseless speculation can never "assist" the jury under Rule 702 and is therefore inadmissible, an expert need not reveal the basis of his opinion absent a specific request by opposing counsel under N.C. Gen. Stat. Sec. 8C-1, Rule 705. Under Rule 705, opposing counsel can challenge the basis of the expert's opinion by request or through *voir dire* or cross-examination. *Id.* The bases of Dr. Appert's medical opinion were clearly revealed during his direct examination and cross-examination.

First, Dr. Appert's opinion was based on his own personal diagnosis and treatment of plaintiff. N.C. Gen. Stat. Sec. 8C-1, Rule 703 states that an expert may base his or her opinion on facts and data perceived before trial. Dr. Appert's diagnosis and treatment of plaintiff's injuries constitutes a pre-trial personal perception upon which he was entitled to base his opinion pursuant to Rule 703. Second, Dr. Appert stated that his opinion was based on plaintiff's own statements made to Dr. Appert during the course of plaintiff's treatment. Prior to adoption of Rule 703, the Supreme Court ruled in *State v. Wade,* 296 N.C. 454, 462, 251 S.E. 2d 407, 412 (1979) that:

> A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, *if such information is inherently reliable even though it is not independently admissible into evidence* . . . . [emphasis added]

Statements made by a patient to his or her physician for purposes of treatment are "inherently reliable" within the meaning of the rule enunciated in *Wade. Id.* at 463, 251 S.E. 2d at 412; *Booker v. Duke Medical Center,* 297 N.C. 458, 479, 256 S.E. 2d 189, 202 (1979). In *State v. Gary,* 78 N.C. App. 29, 38, 337 S.E. 2d 70, 76, *disc. rev. denied,* 316 N.C. 197, 341 S.E. 2d 586 (1986), we

assumed the "reasonably relied upon" standard of Rule 703 is equivalent to the "inherently reliable" standard enunciated in *Wade.* Plaintiff's statements made to Dr. Appert for the purpose of treatment were adequate to support his opinion as a statement "reasonably relied upon by experts in the particular field" under Rule 703.

Thus, Dr. Appert's opinion on causation was adequately based both on his treatment of plaintiff and on statements plaintiff made to him for the purpose of treatment. As defendant failed to demonstrate Dr. Appert's opinions were so baseless they could not help the jury's determinations under Rule 702, Dr. Appert's opinions on causation should have been admitted. The doctor's opinions were certainly not "inherently incredible." *See* 1 H. Brandis, *supra,* Sec. 137, p. 549 n. 57.

## II

Plaintiff's husband, William E. Cherry, alleged he lost the consortium of his wife as a result of defendant's negligence in this case. The consortium issue was appropriately submitted to the jury which specifically found that defendant's negligence did not proximately cause plaintiff William E. Cherry to lose the consortium of his wife. As the trial court inappropriately excluded the testimony of Dr. Appert on causation, plaintiff's husband argues on appeal that this exclusion prejudiced the jury on the issue of lost consortium. As neither plaintiff has made any argument nor pointed to any facts showing why the trial court's evidentiary rulings prejudiced the consortium claim, we decline to overturn the jury's verdict on this issue.

## III

Plaintiff Maude Cherry is entitled to a new trial of her negligence claim. We find no error with respect to plaintiff William E. Cherry's claim of lost consortium.

Affirmed in part, reversed in part and remanded.

Judge JOHNSON concurs.

Chief Judge HEDRICK concurs in the result.