STATE OF NORTH CAROLINA v. LARRY DARNELL BRUNSON, Defendant

No. COA09-976

(Filed 1 June 2010)

**Evidence— lay opinion—hydrocodone—visual identification—chemical analysis required**

   The trial court committed plain error in a drug case by admitting an SBI drug chemist's opinion testimony based on visual identification, without any actual chemical analysis, that the 40 pills found in defendant's possession were 38.2 grams of hydrocodone. The testimony, although supported by experience and education, was tantamount to baseless speculation and equivalent to testimony of a layperson.

   Judge BRYANT concurring in separate opinion.

Appeal by defendant from judgment entered 25 March 2009 by Judge Jay D. Hockenbury in New Hanover County Superior Court. Heard in the Court of Appeals 13 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Stanley G. Abrams, for the State.*

*William D. Spence for defendant.*

ELMORE, Judge.

Larry Darnell Brunson (defendant) appeals his convictions for hydrocodone possession and transportation and for improper passing. For the reasons stated herein, we reverse the trial court's judgment and remand for a new trial.

On 16 January 2008, at about 4:29 p.m., Wilmington Police Officer Peter Oehl saw defendant on Dawson Street at an intersection on 8th Street in Wilmington. Officer Oehl observed defendant's vehicle improperly pass a stopped vehicle and almost hit his unmarked police car as he entered the intersection. Officer Oehl pulled defendant over and observed that defendant seemed nervous. Defendant told the officer that he had a problem with his brakes. Officer Oehl believed that defendant might be engaged in some other "type of suspicious activity" and asked defendant to step out of the car as other officers arrived on scene.

When outside of his vehicle, defendant reached into his right side jacket pocket. Officer Oehl cautioned defendant not to put his hand

into his pocket while the officer was talking to him. The officer then asked if he could search defendant and defendant's vehicle. Defendant consented to a search of the vehicle but not to a search of his person. Officer Oehl told defendant that that was fine, but that he was going to pat him down. Officer Oehl began a patdown and defendant went for his right side pocket again. The other officers at the scene grabbed defendant's arm and "went into his pocket to see why he kept trying to reach in there." The officers pulled three items from the right pocket: a cell phone, a cell phone charger, and "a pill bottle, brown in color, that had no label on it, with what appeared to be some type of white pills." The officers opened the pill bottle and saw that there were forty white pills that had "M360" stamped on them inside the bottle. Subsequently, Officer Oehl called the New Hanover Hospital Pharmacy and was told that pills with those characteristics were hydrocodone, an opium derivative. Officer Oehl charged defendant with trafficking in opiates by possession and by transportation as well as for improper passing.

At trial, the State had an SBI drug chemist, Brittany Dewell, testify about her analysis of the pills. Ms. Dewell testified that she weighed the forty pills and identified the markings on them, but performed no chemical analysis on the pills. Ms. Dewell used a Micromedics database of pharmaceutical preparations to identify the pills according to their markings, color, and shape. Ms. Dewell testified that she had weighed and compared the pills with the database, and that the forty pills constituted 38.2 grams of a pharmaceutical preparation known as hydrocodone, an opium derivative, which is a Schedule III substance.

Defendant offered no evidence at trial. The jury returned verdicts of guilty against defendant for trafficking in hydrocodone by possession of more than twenty-eight grams of hydrocodone, trafficking in hydrocodone by transportation of more than twenty-eight grams of hydrocodone, and improper passing. Judge Hockenbury consolidated the charges and sentenced defendant to an active term of 225 months minimum and 279 months maximum in the custody of the North Carolina Department of Corrections. Defendant now appeals.

Defendant argues numerous assignments of error, but we remand solely on the basis of assignment of error 11:

11. The trial court erred and committed plain error in allowing the State's expert chemist, Ms. Dewell[,] to give her opinion that the 40 pills were 38.2 grams of a pharmaceutical preparation con-

taining dihydrocoheinone which is another chemical name for hydroco[]done, a Schedule III substance and an opiate derivative, for the reason that Ms. Dewell failed to perform sufficient analysis and testing of any of the pills to support her opinion. Identification of suspected controlled substances by visual inspection alone is insufficient.

We agree. Since we find sufficient grounds to vacate the trial court's holding and remand for a new trial for defendant on this basis, we only address the arguments surrounding that issue.

Since defendant at trial made no objections to Ms. Dewell's testimony, we review for plain error. N.C.R. App. P. 10(a)(4) (2010). Our Supreme Court has held that "[a] reversal for plain error is only appropriate in the most exceptional cases." *State v. Duke*, 360 N.C. 110, 138, 623 S.E.2d 11, 30 (2005). This Court has held that the plain error rule:

> is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 672 F.2d 995, 1002 (4th Cir. 1982)) (footnotes omitted).

With great caution, as prescribed by the plain error rule, we find that admittance of Ms. Dewell's opinion testimony, without any actual chemical analysis, amounted to defendant's not receiving a fair trial.

North Carolina Rule of Evidence 702(a) provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2009). This expert assistance to the jury

cannot be baseless speculation under the confines of Rule 702. *Cherry v. Harrell*, 84 N.C. App. 598, 605, 353 S.E.2d 433, 438 (1987). In conjunction with this rule, our Supreme Court has devised a three-step analysis for evaluating the admissibility of expert testimony that has been accepted by this Court: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *State v. Ward*, —— N.C. App. ——, ——, 681 S.E.2d 354, 368 (2009) (quotations and citations omitted).

Ms. Dewell, as an expert chemist, satisfied the requirements of Rule 702 to testify to the chemical composition of chemically analyzed drugs. However, without performing any chemical analysis on the pills, her testimony, although supported by experience and education, was tantamount to baseless speculation and equivalent to testimony of a layperson. Ms. Dewell's proffered method of proof, visual inspection, was not sufficiently reliable as a basis for expert testimony. Our Supreme Court in *State v. Llamas-Hernandez* held that visual identification of a suspected controlled substance by a layperson was impermissible and identification testimony should rest on chemical analysis. *State v. Llamas-Hernandez*, 363 N.C. 8, 673 S.E.2d 658 (2009) (reversing for reasons asserted in the dissenting opinion of the appellate court, 189 N.C. App. 640, 654, 659 S.E.2d 79, 88 (2008)). In *Llamas-Hernandez*, the visual identification by two police officers of a substance as cocaine based on its appearance was held to be lacking sufficient reliability. *Id.*

Pursuant to that ruling, this Court in *State v. Ward* held that "controlled substances defined in terms of their chemical composition can only be identified through the use of a chemical analysis rather than through the use of lay testimony based on visual inspection." *State v. Ward*, —— N.C. App. ——, ——, 681 S.E.2d 354, 371 (2009). Although an expert may have an extensive background in the field of drug analysis, visual analysis by that expert lacks sufficient indices of reliability to support admission of testimony regarding a substance's identification. *Id.* at ——, 681 S.E.2d at 372. In *Ward*, as here, the trial court allowed testimony by the State's expert that relied upon visual identification and Micromedics Literature to determine that the tablets in question were a controlled substance. *Id.*

Ms. Dewell relied upon visual identification and the use of a Micromedics database of pharmaceutical preparations to determine that the pills found on defendant were an opium derivative,

hydrocodone. Hydrocodone, as an opium derivative, is a controlled substance that our General Assembly has defined in terms of its chemical composition. N.C. Gen. Stat. § 90-91(d) (2009). Ms. Dewell's visual identification lacked sufficient indices of reliability to determine the actual substance of the pills. Pursuant to this Court's holding in *Ward*, we hold that Ms. Dewell's testimony was not a valid identification because no chemical analysis was performed. There is a significant probability that, had the lower court properly excluded Ms. Dewell's testimony, the jury would have found defendant not guilty. Accordingly, we find the trial court committed plain error in allowing the opinion testimony of State expert Brittany Dewell, and we vacate and remand for a new trial for defendant.

New trial.

Judge STROUD concurs.

Judge BRYANT concurs by separate opinion.

BRYANT, Judge, concurring in the result.

Because *In re Civil Penalty* requires the result reached in the majority opinion, I concur in the result. 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). However, I write separately to express my concern that requiring chemical analyses of substances which are readily identifiable by visual inspection goes beyond what our General Statutes require.

The majority opinion relies on language from *State v. Ward* that "controlled substances defined in terms of their chemical composition can only be identified through the use of a chemical analysis rather than through the use of lay testimony based on visual inspection." —— N.C. App. ——, ——, 681 S.E.2d 354, 371, *disc. review granted*, 363 N.C. 662, 686 S.E.2d 153 (2009). Our decision in *Ward* was characterized as an extension of the "logic utilized by Judge Steelman in dissent with the subsequent approval of the Supreme Court" in *State v. Llamas-Hernandez*, 189 N.C. App. 640, 659 S.E.2d 79 (2008), *rev'd*, 363 N.C. 8, 673 S.E.2d 658 (2009). *Id.* However, I believe *Ward* actually went beyond the result suggested by Judge Steelman's dissent in that case. *Llamas-Hernandez* concerned visual identification of a non-descript white powder as cocaine. 189 N.C.

App. at 646, 659 S.E.2d at 83. Judge Steelman's dissent specifically distinguished visual identification of such common, non-descript substances from more distinctive controlled substances, noting: "Crack cocaine has a distinctive color, texture, and appearance. While it might be permissible, based upon these characteristics, for an officer to render a lay opinion as to crack cocaine, it cannot be permissible to render such an opinion as to a non-descript white powder." *Id.* at 654, 659 S.E.2d at 87 (distinguishing *State v. Freeman*, 185 N.C. App. 408, 648 S.E.2d 876 (2007)). Despite this distinction in *Llamas-Hernandez*, in *Ward*, as in the instant case, we found error where the trial court allowed testimony from an expert chemist that pharmaceutical pills stamped with identifying markings were controlled substances. *Ward*, —— N.C. App. at ——, 681 S.E.2d at 371-73. Thus, I believe *Ward* extended beyond the logic of the dissent in *Llamas-Hernandez*. In this light, I note that the North Carolina Supreme Court granted discretionary review in *Ward*, and, therefore, we may have additional guidance on this issue in the near future.