IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1337

 Filed: 16 October 2018

Buncombe County, Nos. 15 CRS 91447-49; 15 CRS 91451-52; 16 CRS 164-65

STATE OF NORTH CAROLINA

 v.

MONROE GORDON PILAND, III, Defendant.

 Appeal by Defendant from judgment entered 13 March 2017 by Judge Robert

G. Horne in Buncombe County Superior Court. Heard in the Court of Appeals 5 June

2018.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Adren
 L. Harris, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron
 Thomas Johnson, for defendant-appellant.

 MURPHY, Judge.

 This case involves three challenges by Monroe Piland (“Defendant”) arising

from his trial on various drug-related offenses. Defendant first challenges the trial

court’s denial of his motion to suppress evidence stemming from a search and seizure

of his residence. Officers approached Defendant’s front door and lingered by his

garage before seizing his home to await a search warrant. Defendant moved to

suppress the evidence as the fruit of an unconstitutional search and seizure, which
 STATE V. PILAND

 Opinion of the Court

the trial court denied. Defendant appeals this denial, raising constitutional

arguments.

 Second, Defendant challenges the trial court’s denial of his motion to dismiss.

At the close of the State’s evidence, Defendant argued that the State failed to prove

the required elements of each offense. The trial court denied this motion in respect

to every charge except one. While Defendant also raises a facial challenge to two

indictments containing enhancement provisions, we instead address his alternative

argument that the trial court erred in denying his motion to dismiss the two

enhancement offenses.

 Third, Defendant challenges the trial court’s admission of expert testimony.

The State’s expert testified that she conducted a chemical analysis of the evidence

but failed to testify as to the methodology of her chemical analysis. Defendant

challenges her testimony as unreliable and alleges that the trial court committed

plain error in failing to execute its gatekeeping function under N.C.G.S. § 8C-1, Rule

702.

 BACKGROUND

 The Buncombe County Anti-Crime Task Force (“BCAT”) received a tip from

the Buncombe County Department of Social Services that Defendant was growing

marijuana in his residence. In response, three BCAT officers, Sergeant Thomas,

Detective Austin, and Detective May, drove to Defendant’s home on 22 October 2015

 -2-
 STATE V. PILAND

 Opinion of the Court

to have a “knock and talk” conversation. The officers pulled into the driveway and

parked in front of Defendant’s car, which was parked at the far end of the driveway

beside the home. The garage was located immediately left of the driveway and faced

the driveway, such that the front of the home faced the street but the garage faced

perpendicular to the street. Sergeant Thomas went to the front door to knock, while

Detectives May and Austin remained by the garage. Detective May testified, “There

was a very evident odor of marijuana that was coming from the garage area.” He also

testified that because all three officers could smell marijuana, he knew that they

would seize the home in order to obtain a search warrant.

 On Defendant’s front door was a sign that said “inquiries” with his phone

number on it and a second sign stating “warning” with a citation to several statutes.1

The officers understood the signs to be a “warning” that the officers “did not have the

right to be on his residence.”

 Defendant eventually answered Sergeant Thomas’s knocks at the front door,

and, as soon as Defendant opened the door, Sergeant Thomas smelled “the pungent

 1 The second sign stated, “!!! WARNING!!! IT IS MY DUTY TO INFORM YOU OF YOUR
RIGHT TO WITHDRAW FROM ANY ACTION THAT WILL VIOLATE YOUR SWORN OATH TO
UPHOLD THE CONSTITUTION OF THE UNITED STATES OF AMERICA AS WELL AS YOUR
STATE CONSTITUTION. ANYONE WHO UNDER COLOR OF LAW OR UNLAWFUL AUTHORITY
DEPRIVES ANY CITIZEN OF RIGHTS PRIVILEGES OR IMMUNITIES SECURED TO THEM BY
THE US CONSTITUTION IS SUBJECT TO CIVIL AND (OR) CRIMINAL PENALTIES PURSUANT
TO TITLE 42 U.S.C. § 1983, § 1985, AND § 1986, AS WELL AS TITLE 18 U.S.C. § 241 AND § 242
WHICH CARRIES A FINE OF UP TO $10,000 AND/OR IMPRISONMENT FOR NOT MORE THAN
TEN YEARS OR BOTH. IGNORANCE OF THE LAW IS NO EXCUSE! YOU HAVE BEEN
OFFICIALLY NOTICED! ANY UNLAWFUL THING YOU SAY OR DO WILL BE USED AGAINST
YOU!” (emphasis in original).

 -3-
 STATE V. PILAND

 Opinion of the Court

order [sic] of marijuana emanating from the interior of the residence.” Sergeant

Thomas then made the decision to “maintain the residence pending the issuance of a

search warrant.” The basis for the search warrant came from the following affidavit:

 On Wednesday October 21, 2015, information was received
 by agents of the Buncombe County Anti-Crime Task Force
 (BCAT) regarding [Defendant’s] residence . . . .

 The information was received from a worker with the
 Buncombe County Department of Social Services and said
 that marijuana was being grown at this residence.
 Specifically, that the marijuana was being grown in the
 garage of the residence.

 On Thursday October 22, 2015, BCAT agents went to the
 residence to conduct a follow up investigation. Upon their
 arrival, BCAT agents could detect the odor of marijuana
 coming from the garage while standing in front of the
 garage doors.

 Contact was made with the homeowner, [Defendant].
 While BCAT agents were speaking with [Defendant] on the
 front porch, the odor of fresh growing Marijuana could be
 detected.

Authorized by the search warrant, police seized contraband including various types

of marijuana, drug paraphernalia, opium poppies, a pill bottle containing 170.5

hydrocodone (dihydrocodeinone) pills, liquid morphine, and hallucinogenic

mushrooms (psilocin).

 In March 2016, a grand jury indicted Defendant on four drug-related offenses:

possession of 28 grams or more of opium, opiates and opium derivatives; possession

with intent to sell and deliver (PWISD) opium poppy; maintaining a dwelling for

 -4-
 STATE V. PILAND

 Opinion of the Court

keeping, manufacturing, delivering, and selling controlled substances; and possession

of marijuana paraphernalia.

 In September 2016, an Assistant District Attorney and Detective May

discovered that Defendant’s home was less than 1,000 feet away from a home in which

the homeowner ran a child care facility. In October 2016, a grand jury further

indicted Defendant for four drug-related enhancement offenses: possession with

intent to manufacture, sell, or deliver (PWIMSD) dihydrocodeinone within 1,000 feet

of a child care facility; PWISD psilocin within 1,000 feet of a child care facility;

manufacturing marijuana within 1,000 feet of a child care facility; and PWIMSD

marijuana within 1,000 feet of a child care facility. The indictments cited N.C.G.S. §

90-95(e)(8) as the relevant provision for these offenses. N.C.G.S. § 90-95(e)(8)

provides the requirements for sentencing enhancement for crimes committed under

N.C.G.S. § 90-95(a)(1):

 Any person 21 years of age or older who commits an offense
 under G.S. 90-95(a)(1) on property used for a child care
 center . . . or within 1,000 feet of the boundary of real
 property used for a child care center . . . shall be punished
 as a Class E felon.

N.C.G.S. § 90-95(e)(8) (2017) (emphasis added). Each of the indictments used the

word “facility” rather than center. The two indictments regarding marijuana alleged:

 [T]he defendant named above unlawfully, willfully, and
 feloniously did manufacture marijuana, a controlled
 substance which is included in schedule VI of the North

 -5-
 STATE V. PILAND

 Opinion of the Court

 Carolina Controlled Substances Act within 1000 feet of a
 licensed child care facility[.]

 [T]he defendant named above unlawfully, willfully and
 feloniously did possess with the intent to manufacture, sell
 and deliver, more than 1-1/2 ounces of marijuana . . . within
 1000 feet of a licensed child care facility[.]

(emphasis added). The enhancement provision raised the offenses of manufacturing

marijuana and PWIMSD marijuana from a Class I felony to a Class E felony.

N.C.G.S. § 90-95(b)(2), (e)(8).

 Before trial, Defendant, proceeding pro se, moved to suppress all evidence

stemming from the search and seizure of his home. After a hearing, the trial court

denied Defendant’s motion. The trial court made the following Findings of Fact, inter

alia, in its written order:

 7. The affidavit established that BCAT agents had gone to
 the . . . residence to conduct a follow up investigation. Upon
 their arrival, agents could detect the odor of marijuana
 coming from the garage. The agents then made contact
 with the homeowner [Defendant]. As they spoke with the
 Defendant on the front porch, the agents detected the odor
 of fresh growing marijuana;

 8. The BCAT agents went to the property as a follow up on
 the DSS report and intend to conduct a “knock and talk”.

Based on these facts, the trial court concluded that there was a substantial basis to

conclude that probable cause existed for the issuance of the search warrant and

denied Defendant’s motion to suppress.

 -6-
 STATE V. PILAND

 Opinion of the Court

 At trial, Detective May confirmed that the distance from Defendant’s home to

the child care facility was 452 feet. The State then introduced witness testimony from

Iva Jean Herron Metcalf, a childcare licensing consultant with the North Carolina

Division of Child Development and Early Education to establish the existence of the

child care facility near Defendant’s home. She testified, without objection, that the

daycare met the definition of a childcare “facility.” More specifically, she testified

that the child care facility was a child care “home,” a distinctive term defined by

statute. N.C.G.S. § 110-86(3)(b) (2017).

 Special Agent Elizabeth Reagan testified as an expert witness to the

identification of controlled substances seized from Defendant’s home. She testified

as to her education, qualifications, and work duties and that she accordingly

chemically tested one pill from the bottle seized from Defendant’s home. Based on

her chemical analysis, she concluded that the pills were hydrocodone. However, she

did not describe the methodology employed in her analysis and stated only that she

“performed a chemical analysis[.]” Defendant did not object to the admission of her

expert opinion.

 At the close of the State’s evidence, Defendant moved to dismiss the charges,

arguing that the State failed to prove each element of the offenses. The trial court

dismissed one charge of PWISD opium poppy because there was no chemical analysis

performed on that substance but denied the motion as to all other charges. The jury

 -7-
 STATE V. PILAND

 Opinion of the Court

ultimately convicted Defendant of seven drug-related offenses.2 The trial court

sentenced Defendant to an active term of 225 to 282 months for trafficking opium, as

well as a $500,000.00 fine. The trial court consolidated the remaining convictions

and sentenced Defendant to an active sentence of 25 to 42 months for the Class E

manufacturing marijuana within 1,000 feet of a child care center conviction.

 ANALYSIS

 A. Motion to Suppress

 On appeal, Defendant argues that the trial court committed plain error by

allowing the State to introduce evidence resulting from an unconstitutional search

and seizure of his home. Specifically, Defendant argues that the search warrant

application was tainted because the officers had no right to linger in the curtilage

outside of the garage or to ignore Defendant’s revocation of an implied license to

approach the front door.

 Defendant does not challenge the trial court’s Findings of Fact, but instead

challenges the denial of the motion to suppress on the basis that the evidence is the

result of a “tainted” search and seizure. Normally, “[t]he standard of review in

evaluating a trial court’s ruling on a motion to suppress is that the trial court’s

 2 Trafficking opium, opiates, or opium derivative by possessing 28 grams or more;
manufacturing marijuana within 1,000 feet of a licensed child care center; maintaining a dwelling for
keeping or selling of a controlled substance; possession of marijuana with intent to manufacture, sell,
or deliver (PWIMSD) within 1,000 feet of a licensed child care center; possession of dihydrocodeinone;
possession of psilocin; and possession of marijuana drug paraphernalia

 -8-
 STATE V. PILAND

 Opinion of the Court

findings of fact ‘are conclusive on appeal if supported by competent evidence, even if

the evidence is conflicting.’” State v. Smith, 160 N.C. App. 107, 114, 584 S.E.2d 830,

835 (2003) (quoting State v. Logner, 148 N.C. App. 135, 137, 557 S.E.2d 191, 193

(2001)).

 However, Defendant did not preserve the issue of the admissibility of the

evidence at trial by objecting to its admission. Therefore, our standard of review is

plain error:

 In criminal cases, an issue that was not preserved by
 objection noted at trial and that is not deemed preserved
 by rule or law without any such action nevertheless may be
 made the basis of an issue presented on appeal when the
 judicial action questioned is specifically and distinctly
 contended to amount to plain error.

N.C. R. App. P. 10(a)(4). “[T]o constitute plain error, a defendant must demonstrate

that a fundamental error occurred at trial. To show that an error was fundamental,

a defendant must establish prejudice—that, after examination of the entire record,

the error had a probable impact on the jury’s finding that the defendant was guilty.”

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and

internal quotation marks omitted).

 “The Fourth Amendment protects ‘[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures.’”

State v. Grice, 367 N.C. 753, 756, 767 S.E.2d 312, 315 (2015) (alteration in original)

(quoting U.S. Const. amend. IV). “The touchstone of the Fourth Amendment is

 -9-
 STATE V. PILAND

 Opinion of the Court

reasonableness.” Id. (citation omitted). “Generally, a warrant supported by probable

cause is required before a search is considered reasonable.” State v. Phillips, 151 N.C.

App. 185, 191, 565 S.E.2d 697, 702 (2002) (citation omitted). “What is reasonable, of

course, depends on all of the circumstances surrounding the search or seizure and the

nature of the search or seizure itself.” State v. Battle, 202 N.C. App. 376, 383, 688

S.E.2d 805, 812 (2010) (citation and quotation marks omitted).

 Defendant does not challenge the search warrant application as facially

invalid, but rather challenges that the search warrant application was tainted as a

result of an unlawful search and seizure. However, we decline to supplement the four

corners of the warrant with the transcript in our review. “Our Supreme Court has

stated it was error for a reviewing court to rely upon facts . . . that [go] beyond the

four corners of [the] warrant.” State v. Parson, ____ N.C. App. ____, ____, 791 S.E.2d

528, 536 (2016) (citation and quotation marks omitted). Therefore, our review is

limited to determining whether the following facts contained in the warrant were

obtained in violation of Defendant’s Fourth Amendment rights:

 On Thursday October 22, 2015, BCAT agents went to the
 residence to conduct a follow up investigation. Upon their
 arrival, BCAT agents could detect the odor of marijuana
 coming from the garage while standing in front of the
 garage doors.

 Contact was made with the homeowner, [Defendant].
 While BCAT agents were speaking with [Defendant] on the
 front porch, the odor of fresh growing Marijuana could be
 detected.

 - 10 -
 STATE V. PILAND

 Opinion of the Court

Based on these facts, we conclude that the trial court did not err in denying

Defendant’s motion to suppress because the search and seizure was not an

unconstitutional violation amounting to plain error.

1. Garage

 Defendant claims that the officers unconstitutionally searched and seized his

home by “parking in [Defendant]’s driveway, blocking his car, and lingering in the

curtilage near his garage instead of parking on the street . . . .”

 We find State v. Grice instructive here. Grice, 367 N.C. 753, 767 S.E.2d 312.

In Grice, the police responded to a tip that the defendant was growing marijuana at

his home and conducted a “knock and talk investigation.” Id. at 754, 767 S.E.2d at

314. The officers drove into the driveway and parked behind the defendant’s car. Id.

One of the officers knocked at the door while the other remained in the driveway. Id.

at 754-55, 767 S.E.2d at 314-15. From the driveway, the officer spotted marijuana

growing in buckets about fifteen yards away. Id. at 755, 767 S.E.2d at 315. Both

officers approached the buckets and seized the plants before they obtained a search

warrant. Id. Our Supreme Court held that the knock and talk investigation brought

the officers lawfully onto the property and that “[t]he presence of the clearly

identifiable contraband justified walking further into the curtilage.” Id. at 758, 767

S.E.2d at 317.

 - 11 -
 STATE V. PILAND

 Opinion of the Court

 In order to determine whether the officers could linger by the garage, it is

necessary to first determine whether the officers had a lawful right to be in

Defendant’s driveway. The officers went to Defendant’s home to conduct a knock and

talk investigation:

 A “knock and talk” is a procedure by which police officers
 approach a residence and knock on the door to question the
 occupant, often in an attempt to gain consent to search
 when no probable cause exists to obtain a warrant. This
 Court and the North Carolina Supreme Court have
 recognized the right of police officers to
 conduct knock and talk investigations, so long as they do
 not rise to the level of Fourth Amendment searches.

State v. Marrero, ____ N.C. App. ____, ____, 789 S.E.2d 560, 564 (2016) (citations

omitted). Thus, officers conducting a knock and talk investigation can lawfully

approach a home so long as the officers remain within the permissible scope afforded

by the knock and talk. See id. The United States Supreme Court explained the

permissible scope in Florida v. Jardines, 569 U.S. 1, 133 S. Ct. 1409 (2013):

 [T]he knocker on the front door is treated as an invitation
 or license to attempt an entry, justifying ingress to the
 home by solicitors, hawkers and peddlers of all kinds. This
 implicit license typically permits the visitor to approach
 the home by the front path, knock promptly, wait briefly to
 be received, and then (absent invitation to linger longer)
 leave. Complying with the terms of that traditional
 invitation does not require fine-grained legal knowledge; it
 is generally managed without incident by the Nation’s Girl
 Scouts and trick-or-treaters. Thus, a police officer not
 armed with a warrant may approach a home and knock,
 precisely because that is no more than any private citizen
 might do.

 - 12 -
 STATE V. PILAND

 Opinion of the Court

Id. at 8, 133 S. Ct. at 1415-16 (citations, footnote, and internal quotation marks

omitted). We note that “law enforcement may not use a knock and talk as a pretext

to search the home’s curtilage.” State v. Huddy, ____ N.C. App. ____, ____, 799 S.E.2d

650, 654 (2017) (citation omitted). “Put another way, law enforcement may do what

occupants of a home implicitly permit anyone to do, which is ‘approach the home by

the front path, knock promptly, wait briefly to be received, and then (absent

invitation to linger longer) leave.’” Id. (quoting Jardines, 569 U.S. at 8, 133 S. Ct. at

1415). “This limitation is necessary to prevent the knock and talk doctrine from

swallowing the core Fourth Amendment protection of a home’s curtilage.” Id.

 We conclude that the officers had a lawful presence in the portion of

Defendant’s driveway where they parked to perform the knock and talk. In light of

Grice and Jardines, we next examine the officers’ conduct. Defendant’s driveway was

directly next to the garage door. While there is a path before the garage which allows

a visitor to walk to the front door, this path attaches to the driveway and is only a

few feet from the garage. Thus, we find that any private citizen wishing to knock on

Defendant’s front door would be entitled to drive into the driveway, get out, walk

between the car and the path so as to stand next to the garage, and continue on the

path to the front porch. Therefore, we conclude that the officers’ conduct here, as in

Grice, was permitted when they pulled into the driveway by the garage, got out of

 - 13 -
 STATE V. PILAND

 Opinion of the Court

their car, and stood between the car and the garage. See Grice, 367 N.C. at 757-58,

767 S.E.2d at 316.

 Grice is sufficiently analogous to Defendant’s case with respect to the officers’

presence in Defendant’s curtilage to allow the officers’ lingering by the garage.3 Just

as in Grice, law enforcement went to the residence lawfully to conduct a knock and

talk. The officers in Grice could see the marijuana from the driveway, and here, the

officers could smell the marijuana from their location in the driveway. Moreover, our

Supreme Court has held that when the contraband is in plain view, there is no search

under the Fourth Amendment. Grice, 367 N.C. at 756, 767 S.E.2d at 316.

 We therefore find that the officers’ lingering by the garage was justified and

did not constitute a search under the Fourth Amendment.

2. Front Door

 Defendant argues that he revoked the officers’ implied license when they

remained at his front door after he told them to leave through the placement of

signage. Defendant further argues that by ignoring this written revocation, the

officers violated his constitutional rights under the Fourth Amendment. However,

because Defendant did not make this argument before the trial court, the issue is not

preserved for appeal. “Our Supreme Court has long held that where a theory argued

 3 On 1 June 2018, Defendant submitted a memorandum of additional authority citing to the
United States Supreme Court’s opinion in Collins v. Virginia, ____ U.S. ____, ____, 138 S. Ct. 1663,
1669-73 (2018). However, while factually similar, we find that the officers’ conduct here did not exceed
the scope of reasonable behavior as did the officer’s conduct in Collins.

 - 14 -
 STATE V. PILAND

 Opinion of the Court

on appeal was not raised before the trial court, the law does not permit parties to

swap horses between courts in order to get a better mount in the appellate courts.”

State v. Shelly, 181 N.C. App. 196, 206-07, 638 S.E.2d 516, 524 (2007) (citations and

internal quotation marks omitted). “[T]his Court routinely dismisses arguments

advanced by defendants in criminal cases when the defendants attempt to mount and

ride a stronger or better, and possibly prevailing steed not run before the trial court.”

State v. Hester, ____ N.C. App. ____, ____, 803 S.E.2d 8, 16 (2017). Therefore, “[w]hen

a party changes theories between the trial court and an appellate court, the

assignment of error is not properly preserved and is considered waived.” Shelly, 181

N.C. App. at 207, 638 S.E.2d at 524 (citation omitted).

 After careful review of the transcript from the suppression hearing, we find

that Defendant did not argue that the signs on his door revoked the officers’ implied

license, or even that the signs expressed a specific intent that the officers leave the

residence. Rather, Defendant argued that the officers “intruded upon his dwelling”

by “coming to the garage door.” Consequently, we will not allow Defendant to “swap

horses” to prevail at the appellate level with this new argument. Shelly, 181 N.C.

App. at 206, 638 S.E.2d at 524.

 Because Defendant did not argue that the signs acted as a revocation of the

officers’ implied license at the suppression hearing, he cannot present this argument

on appeal. We therefore decline to consider the merits of this argument.

 - 15 -
 STATE V. PILAND

 Opinion of the Court

3. Facts Supporting the Search Warrant Were Lawfully Obtained

 Because the officers lawfully lingered by the garage prior to the discovery of the

facts in the search warrant affidavit, we find that there is no error in the trial court’s

denial of Defendant’s motion to suppress.

 B. Enhancement of Offense for PWIMSD Marijuana Within 1,000 Feet of a
 Child Care Facility and for Manufacturing Marijuana within 1,000 Feet
 of a Child Care Facility

 Defendant challenges as facially invalid the indictment for manufacturing

marijuana within 1,000 feet of a child care “facility” and the indictment for PWIMSD

marijuana within 1,000 feet of a child care “facility.” A defendant can challenge the

facial validity of an indictment at any time, even if he or she did not raise it at trial,

because a facially invalid indictment “depriv[es] the trial court of its jurisdiction.”

State v. Williams, 368 N.C. 620, 622, 781 S.E.2d 268, 270 (2016) (citation omitted).

Defendant argues, in the alternative, that we should find that the trial court erred in

denying his motion to dismiss regarding the enhancement of the offenses because the

evidence “was insufficient to prove that the facility was, in fact, a ‘child care center.’”

Because we conclude that the evidence does not support a conviction based on the

enhancement offenses, we find it unnecessary to address Defendant’s argument that

the indictments are facially invalid.

 - 16 -
 STATE V. PILAND

 Opinion of the Court

 While Defendant moved to dismiss at the end of the State’s case, he did not

renew his motion to dismiss at the close of all evidence, and has therefore failed to

preserve the issue on appeal:

 A defendant may make a motion to dismiss the action . . .
 at the conclusion of all the evidence, irrespective of
 whether defendant made an earlier such motion. If the
 motion at the close of all the evidence is denied, the
 defendant may urge as ground for appeal the denial of the
 motion made at the conclusion of all the evidence.
 However, if a defendant fails to move to dismiss the action
 . . . at the close of all the evidence, defendant may not
 challenge on appeal the sufficiency of the evidence to prove
 the crime charged.

N.C. R. App. P. 10(a)(3). “Nevertheless, this Court’s imperative to correct

fundamental error . . . may necessitate appellate review of the merits despite the

occurrence of default.” State v. Davis, 198 N.C. App. 146, 149, 678 S.E.2d 709, 712

(2009) (alteration in original) (citation and internal quotation marks omitted).

 To prevent manifest injustice to a party, or to expedite
 decision in the public interest, either court of the appellate
 division may, except as otherwise expressly provided by
 these rules, suspend or vary the requirements or provisions
 of any of these rules in a case pending before it upon
 application of a party or upon its own initiative, and may
 order proceedings in accordance with its directions.

N.C. R. App. P. 2. We find that justice requires us to invoke Rule 2, and we therefore

examine Defendant’s motion to dismiss in light of evidence presented at trial.

 We first note the discrepancies between the language in the indictments and

the language in the statute. Defendant was convicted of offenses within 1,000 feet of

 - 17 -
 STATE V. PILAND

 Opinion of the Court

a child care “facility.” However, the statute provides that this sentencing

enhancement only applies within 1,000 feet of a child care “center:”

 Any person 21 years of age or older who commits an offense
 under [this statute] on property used for a child care center,
 or for an elementary or secondary school or within 1,000
 feet of the boundary of real property used for a child care
 center, or for an elementary or secondary school shall be
 punished as a Class E felon . . . . For purposes of this
 subdivision, a child care center is as defined in G.S. 110-
 86(3)[a], and that is licensed by the Secretary of the
 Department of Health and Human Services.

N.C.G.S. § 90-95(e)(8) (emphasis added). N.C.G.S. § 110-86(3) explicitly defines:

 (3) Child care facility. --Includes child care centers, family
 child care homes, and any other child care arrangement not
 excluded by G.S. 110-86(2), that provides child care,
 regardless of the time of day, wherever operated, and
 whether or not operated for profit.

 a. A child care center is an arrangement where, at any one
 time, there are three or more preschool-age children or
 nine or more school-age children receiving child care.

 b. A family child care home is a child care arrangement
 located in a residence where, at any one time, more than
 two children, but less than nine children, receive child
 care.

N.C.G.S. § 110-86(3)(a)-(b) (2017) (emphasis added).

 At trial, the child care licensing consultant for the State of North Carolina

Division of Child Development and Early Education testified that the daycare was a

child care “facility” and, specifically, a child care “home,” but never testified that it

was a child care “center.”

 - 18 -
 STATE V. PILAND

 Opinion of the Court

 The State: Now, are you aware of a child care facility
 located at [daycare owner’s residence]?

 Witness: Yes.

 The State: Could you give us a description of who owns that
 and what their licensing is?

 Witness: [The owner] has her basement converted to a
 child care facility. She cares for, being a family child care
 home she can care for five pre-schoolers and three school-
 agers, a maximum of eight children in that facility. I’ve
 been monitoring her for ten years.

 ....

 The State: Now, is that a child care facility as defined
 under General Statute 110-86?

 Witness: Yes, family child care home.

 The State: Now, there are a number of exclusions listed in
 Section (2) of 110-86. Does this child care facility fit any of
 those exclusions?

 Witness: No.

(emphasis added). The witness’s express testimony was that the child care facility

was, specifically, a child care home. At no point in her testimony did the witness

testify that the facility met the definition of a child care center or present evidence

that it could be classified as such. The witness’s description of the facility was that

the owner “can care for five pre-schoolers and three school-agers.” (emphasis added).

In order to meet the definition of a child care center under N.C.G.S. § 110-86(3)(a),

it must be shown that “at any one time, there are three or more preschool-age children

 - 19 -
 STATE V. PILAND

 Opinion of the Court

or nine or more school-age children receiving child care.” N.C.G.S. § 110-86(3)(a)

(2017) (emphasis added). There was no evidence elicited from the licensing

consultant or any other witness about how many children there actually were in the

facility at any given time – only the potential capacity of the facility. Thus, there was

no evidence that this facility met the definition of a child care center under N.C.G.S.

§ 110-86(3)(a).

 N.C.G.S. § 90-95(e)(8) explicitly states that the enhancement provision applies

only to child care “centers.” The statute does not provide the enhancement for

“homes” or “facilities.” “A statute that is clear and unambiguous must be given its

plain and definite meaning.” State ex. rel. Utilities Commission v. North Carolina

Sustainable Energy Ass’n, ____ N.C. App. ____, ____, 803 S.E.2d 430, 432 (2017)

(internal quotation marks and citation omitted). “If the language of the statute is

clear and is not ambiguous, we must conclude that the legislature intended the

statute to be implemented according to the plain meaning of its terms.” Three Guys

Real Estate v. Harnett County, 345 N.C. 468, 472, 480 S.E.2d 681, 683 (1997) (internal

quotation marks and citation omitted). “Furthermore, this Court cannot delete words

or insert words not used in a statute.” North Carolina Sustainable Energy Ass’n, ____

N.C. App. at ____, 803 S.E.2d at 433 (internal quotation marks and citation omitted).

We therefore conclude that the Legislature intended that N.C.G.S. § 90-95(e)(8) apply

only to child care “centers.”

 - 20 -
 STATE V. PILAND

 Opinion of the Court

 Even in the light most favorable to the State, the evidence at trial was that the

child care facility in question was a “facility” and “home,” but not a child care “center”

as defined by our General Assembly. Consequently, it was error for the trial court to

deny Defendant’s motion to dismiss the statutory enhancement. The judgment for

manufacturing marijuana within 1,000 feet of a child care center and the judgement

for PWIMSD marijuana within 1,000 feet of a child care center are therefore vacated

and this case is remanded for resentencing on the lesser included offenses of

manufacturing marijuana and possession with intent to manufacture, sell, or deliver

marijuana. See State v. Gooch, 307 N.C. 253, 257-58, 297 S.E.2d 599, 601-02 (1982)

(vacating a verdict of possession of more than one ounce of marijuana and remanding

for resentencing of the lesser included offense of simple possession of marijuana

because the jury necessarily found the defendant guilty on all other essential

elements of the offense). Further, because six of Defendant’s convictions were

consolidated into the same judgment, the trial court must conduct a new sentencing

hearing on the consolidated charges. State v. Hardy, 242 N.C. App. 146, 160, 774

S.E.2d 410, 420 (2015) (“When the trial court consolidates multiple convictions into a

single judgment but one of the convictions was entered in error, the proper remedy is

to remand for resentencing . . . .” (citation omitted)).

 C. Expert Witness Testimony

 - 21 -
 STATE V. PILAND

 Opinion of the Court

 Finally, Defendant challenges the expert witness testimony that the pills

contained in the bottle were hydrocodone because the expert did not testify as to the

methods employed in her chemical analysis. If a defendant challenges the trial

court’s allowance of expert testimony based on the requirements of Rule 702(a), the

appellate court will not reverse “absent a showing of abuse of discretion.” State v.

McGrady, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (citation omitted). However, “an

unpreserved challenge to the performance of a trial court’s gatekeeping function in

admitting opinion testimony in a criminal trial is subject to plain error review in

North Carolina state courts.” State v. Hunt, ____ N.C. App. ____, ____, 792 S.E.2d

552, 559 (2016). As is the case here, when a defendant does not challenge the

admission of the expert testimony at trial, we only review for plain error. Id.

 “Whether expert witness testimony is admissible under Rule 702(a) is a

preliminary question that a trial judge decides pursuant to Rule 104(a).”4 McGrady,

368 N.C. at 892, 787 S.E.2d at 10 (citations omitted). To be reliable, the testimony

must satisfy a three-part test: “(1) The testimony [must be] based upon sufficient facts

or data. (2) The testimony [must be] the product of reliable principles and methods.

(3) The witness [must have] applied the principles and methods reliably to the facts

of the case.” Id. at 890, 787 S.E.2d at 9 (alteration in original) (citation omitted); see

N.C.G.S. § 8C-1, Rule 702(a). “[T]he trial court has discretion in determining how to

 4“Preliminary questions concerning the qualification of a person to be a witness, . . . or the
admissibility of evidence shall be determined by the court . . . .” N.C.G.S. § 8C-1, Rule 104(a) (2017).

 - 22 -
 STATE V. PILAND

 Opinion of the Court

address the three prongs of the reliability test.” McGrady, 368 N.C. at 890, 787

S.E.2d at 9 (citation omitted).

 The expert testimony here stated:

 The State: Okay. Once you received [the pill bottle], how
 did you begin your analysis of it?

 Expert Witness: [T]he first thing I did was examine all the
 tablets for consistency . . . . I then performed a chemical
 analysis on a single tablet to confirm that they did in fact
 contain what the manufacturer had reported.

 ....

 The State: And what did you find those pills to contain?

 Expert Witness: Based on the results of my analysis, . . .
 hydrocodone, which is a Schedule III preparation of an
 opium derivative.

Defendant argues that the testimony contains a serious defect as the expert witness

“did not identify, describe, or justify the procedure she employed to determine

whether the pills contained a controlled substance.” Specifically, “[s]he did not

identify the test she performed, describe how she performed it, or explain[] why she

considered it reliable.” Thus, Defendant asserts that the trial court did not properly

exercise its gatekeeping functions which amounts to plain error. We agree that the

failure to consider the methods of analysis employed was an abuse of discretion, but

this does not amount to plain error in this case.

 - 23 -
 STATE V. PILAND

 Opinion of the Court

 Defendant relies on State v. Brunson, 204 N.C. App. 357, 693 S.E.2d 390

(2010), for the proposition that “the admission of her testimony identifying the pills

as hydrocodone amounted to plain error.” In Brunson, an expert witness testified

that certain pills contained hydrocodone based on “markings, color, and shape,” but

not based on a chemical analysis. Id. at 358-60, 693 S.E.2d at 391. On appeal, we

held that the trial court’s allowance of her testimony was plain error because her

“visual identification lacked sufficient indices of reliability to determine the actual

substance of the pills.” Id. at 361, 693 S.E.2d at 393. As a result, “her testimony,

although supported by experience and education, was tantamount to baseless

speculation and equivalent to testimony of a layperson.” Id. at 360, 693 S.E.2d at

392.

 Because the expert in Brunson did not perform a chemical analysis, we held

that there was a “significant probability that, had the lower court properly excluded

[the expert’s] testimony, the jury would have found defendant not guilty.” Id. at 361,

693 S.E.2d at 393. Here, however, the expert did perform a chemical analysis. The

evidence merely lacks any discussion of that analysis. We therefore find Brunson

distinguishable from Defendant’s case.

 Since our review is limited to plain error review, we ask whether the trial court

committed an error “so basic, so prejudicial, so lacking in its elements that justice

cannot have been done.” State v. Bush, 164 N.C. App. 254, 257-58, 595 S.E.2d 715,

 - 24 -
 STATE V. PILAND

 Opinion of the Court

717-18 (2004) (citations and internal quotations omitted). The standard is so high “in

part at least because the defendant could have prevented any error by making a

timely objection.” State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83-84 (1986)

(citation omitted). Here, it was error for the trial court not to properly exercise its

gatekeeping function of requiring the expert to testify as to the methodology of her

chemical analysis. However, the error does not amount to plain error because the

expert testified that she performed a “chemical analysis” and as to the results of that

chemical analysis. Her testimony stating that she conducted a chemical analysis and

that the result was hydrocodone does not amount to “baseless speculation,” and

therefore her testimony was not so prejudicial that justice could not have been done.

See Brunson, 204 N.C. App. at 360, 693 S.E.2d at 392.

 CONCLUSION

 We hold that the officers had a lawful presence in Defendant’s driveway,

justified by the knock and talk investigation. Furthermore, the officers here, as in

Grice, were permitted to get out of their cars and stand by the garage. Defendant’s

argument that the signs on the front door revoked the officers’ implied license to

approach is unpreserved for appeal, and we therefore decline to consider the merits

of this argument.

 We also hold that the trial court erred in denying Defendant’s motion to

dismiss because the State failed to prove that the child care facility was a child care

 - 25 -
 STATE V. PILAND

 Opinion of the Court

“center” as defined by our General Assembly. Because we conclude that the resulting

judgments based on the enhancement provision must be vacated and remanded for

resentencing of the lesser included offenses, we do not decide whether the indictments

for those judgments are facially invalid.

 Lastly, we hold that the trial court’s admission of expert testimony regarding

a chemical analysis of the evidence, while lacking in testimony regarding the specific

methods involved in that analysis, does not rise to the level of plain error.

 NO ERROR IN PART; VACATED IN PART AND REMANDED FOR

RESENTENCING; AND NO PLAIN ERROR IN PART.

 Judges CALABRIA and ARROWOOD concur.

 - 26 -